1
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2

3  ------------------------------X
                               :
4  UNITED STATES OF AMERICA,    :
                               :  15-CR-381 (RJD)
5           v.                  :
                               :  August 2, 2016
6  LEONID MOMOTOK,              :  Brooklyn, New York
                               :
7            Defendant.         :
                               :
8  ------------------------------X

9

                TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
10          BEFORE THE HONORABLE RAMON E. REYES, JR.
                  UNITED STATES MAGISTRATE JUDGE
11

12  APPEARANCES:

13

    For the Government:        UNITED STATES ATTORNEY
14                             BY: CHRISTOPHER NASSON, ESQ.
                               RICH TUCKER, ESQ.
15                             ASSISTANT U.S. ATTORNEY

16

17  For the Defendant:         LINDA GAIL MORENO, ESQ.
                               Constitutional Law Center for
18                              Muslims in America
                               833 E Arapaho Road
19                             Richardson, Texas 75081

20

21  Court Transcriber:         SHARI RIEMER, CET-805
                               TypeWrite Word Processing Service
22                             211 N. Milton Road
                               Saratoga Springs, New York 12866
23

24

25

    Proceedings recorded by electronic sound recording,
    transcript produced by transcription service

2

1

2

I N D E X

3

4

Defendant Sworn at Page 4

5

6

<u>EXHIBITS</u>                                    <u>Marked</u>   <u>Received</u>

7

1    Plea Agreement                          --        12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1    (Proceedings began at 12:27 p.m.)

2              THE CLERK: This is a Criminal Cause for Pleading,

3    Case No. 15-CR-381, United States v. Korchevsky, et al.  This

4    is defendant in 3, Leonid Momotok.

5              Counsel, please state your name for the record.

6              MR. NASSON:  Good afternoon, Your Honor.  Chris

7    Nasson, Rich Tucker on behalf of the United States.  At the

8    end of the table is Special Agent John Polonitza, FBI, and for

9    the record the last names are spelled N-A-S-S-O-N, T-U-C-K-E-

10   R, P-O-L-O-N-I-T-Z-A.

11             THE COURT: Good afternoon.

12             MR. TUCKER: Good afternoon, Your Honor.

13             MS. MORENO: Good afternoon, Your Honor.  Linda

14   Moreno for Mr. Leonid Momotok who's present before the Court.

15   Momotok, M-O-M-O-T-O-K.

16             THE COURT: Good afternoon.  Please be seated.

17             MS. MORENO: Good afternoon, sir.

18             THE COURT:

19                        [Pause in proceedings.]

20             THE COURT: Mr. Momotok, I'm advised -- you can sit

21   down.

22             I'm advised by your attorney that you wish to plead

23   guilty to Count 1 of the indictment that's been filed against

24   you; is that correct?

25             THE DEFENDANT:  Yes, Your Honor.

4

1          THE COURT:  This is a serious decision that you will

2  have to make and I will have to make sure that you understand

3  all of your rights and also the consequences of your guilty

4  plea.

5          To do that, I'll have to ask you some questions and

6  your answers to my questions must be made under oath. So if

7  you'll stand up and raise your right hand, I'll swear you in.

8  (AT THIS TIME THE DEFENDANT, LEONID MOMOTOK, WAS SWORN.)

9          THE COURT: You may be seated.

10         Do you understand that having been sworn your

11 answers to my questions will be subject to the penalties of

12 perjury or of making a false statement if you do not answer

13 truthfully?  Do you understand that?

14         THE DEFENDANT: Yes, Your Honor.

15         THE COURT:  That means that if you answer falsely to

16 any of my questions, the Government may prosecute you for

17 perjury or making a false statement and may use any of your

18 false statements made today during that prosecution.  Do you

19 understand?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT: As I'm sure you're aware, this is Judge

22 Dearie's case.  He is the judge who will sentence you and make

23 the ultimate decision as to whether to accept your guilty

24 plea.  If you wish, you have the absolute right to plead

25 guilty directly in front of Judge Dearie and there will be no

5

1    prejudice to you.  Alternatively, if you wish, I will listen

2    to your plea.  A transcript of this proceeding will be made by

3    the court reporter and Judge Dearie will then review the

4    transcript in connection with your sentence.  Do you

5    understand?

6                   THE DEFENDANT:  Yes, Your Honor.

7                   THE COURT:  Do you wish to give up your right to

8    plead guilty directly in front of Judge Dearie and instead

9    proceed in front of me?

10                  THE DEFENDANT:  Yes, Your Honor.

11                  THE COURT:  Are you making this decision voluntarily

12   and of your own free will?

13                  THE DEFENDANT:  Yes, Your Honor.

14                  THE COURT:  Has anyone threatened you or have any

15   promises been made to you to induce you to plead guilty in

16   front of me as opposed to pleading guilty in front of Judge

17   Dearie?

18                  THE DEFENDANT:  No, Your Honor.

19                  THE COURT:  In connection with that, I've been given

20   a -- the consent form that permits me to listen to your plea.

21   There are a number of signatures on it, one of which is next

22   to that green PostIt.  Is that your signature?

23                  THE DEFENDANT: Yes, Your Honor.

24                        [Pause in proceedings.]

25                  THE COURT:  As I said, Mr. Momotok, before I listen

6

1   to your plea there are a number of questions I have to ask you

2   to assure myself that your plea is valid. If you don't

3   understand any of my questions, or if you don't understand

4   anything that I'm explaining to you today, please let me know

5   and I'll re-word it. Okay?

6           THE DEFENDANT: Yes, sir.

7           THE COURT: What is your full name?

8           THE DEFENDANT: Leonid Momotok.

9           THE COURT: How old are you?

10          THE DEFENDANT: I am 49 -- 48.

11          THE COURT: What schooling or education have you

12   had?

13          THE DEFENDANT: I got college, a college degree.

14          THE COURT: Are you under the care of a doctor or a

15   psychiatrist for any reason?

16          THE DEFENDANT: No.

17          THE COURT: In the past 24 hours, have you taken any

18   drugs, medicines or pills, or have you drunk any alcoholic

19   beverages?

20          THE DEFENDANT: No.

21          THE COURT: Have you ever been hospitalized or

22   treated for drug addiction, alcoholism, or mental or emotional

23   problems?

24          THE DEFENDANT: No.

25          THE COURT: Is your mind clear right now?

7

1          THE DEFENDANT: Yes.

2          THE COURT:  Do you understand what's going on?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Mr. Momotok, as a defendant in a

5    criminal case you have the right to be represented by an

6    attorney at every stage of the proceedings from when you're

7    arrested through trial and appeal.  I understand that you've

8    retained Ms. Moreno to represent you.  If at any point during

9    these proceedings or in the future you can no longer afford to

10   have her represent you, you can ask the Court to appoint an

11   attorney and if you're eligible financially the Court will

12   appoint an attorney to represent you.  Do you understand?

13         THE DEFENDANT: Yes, Your Honor.

14         THE COURT:  Have you had any difficulty

15   communicating with Ms. Moreno concerning your case?

16         THE DEFENDANT: No.

17         THE COURT:  Had you had enough time to talk to her

18   about your case, the charges, your rights and the decision to

19   enter a guilty plea?

20         THE DEFENDANT: Yes, Your Honor.

21         THE COURT:  Are you fully satisfied with the

22   representation and advice that she has provided to you?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT: You've had these discussions with Mr.

25   Momotok?

8

1          MS. MORENO: Yes, Your Honor.

2          THE COURT: Are you satisfied that he understands the

3    rights that he is giving up by pleading guilty?

4          MS. MORENO: I do understand that.

5          THE COURT: Is he capable of understanding the nature

6    of these proceedings?

7          MS. MORENO: He is.

8          THE COURT:  Do you have any doubt at all about his

9    competence to plead guilty at this time?

10         MS. MORENO: No.

11         THE COURT: Have you discussed with him the maximum

12   and minimum sentences and fines that can be imposed upon him

13   if he pleads guilty?

14         MS. MORENO: I've discussed those fully, Your Honor.

15         THE COURT:  Did you go over the sentencing

16   guidelines with him and how they affect his case?

17         MS. MORENO: Many times.

18                    [Pause in proceedings.]

19         THE COURT:  Mr. Momotok, the Government has charged

20   you in an indictment with conspiracy to commit wire fraud.

21   The charge reads in or about and between February 2010 and

22   August 2015, both dates being approximate and inclusive,

23   within the Eastern District of New York and elsewhere, the

24   defendants Vitaly Korchevsky, Vladislav Khalupsky, Leonid

25   Momotok and Alexander Garkusha together with co-conspirator 1,

9

1   co-conspirator 2, co-conspirator 3, co-conspirator 4, co-

2   conspirator 5 and others did knowingly and intentionally

3   conspire to execute a scheme and artifice to defraud the

4   victim, news wires and target companies and to obtain money

5   and property from the victim news wires and the target

6   companies by means of materially false and fraudulent

7   pretenses, representations and promises and for the purpose of

8   executing such scheme and artifice to transmit and cause to be

9   transmitted by means of wire communication in interstate and

10  foreign commerce, writings, signs, signals, pictures, and

11  sounds contrary to Title 18 United States Code Section 1343.

12              THE COURT: Have you seen a copy of the indictment?

13              THE DEFENDANT: Yes, Your Honor.

14              THE COURT: You've discussed the charges with your

15  attorney?

16              THE DEFENDANT: Yes, Your Honor.

17              THE COURT: Do you understand the charges pending

18  against you?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  What I want to do now is go over the

21  rights that you have and the rights that you'll be giving up

22  if you plead guilty.

23              First of all, you have the right to plead not

24  guilty.  Do you understand that?

25              THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  What that means is that even if you are

2    guilty, you have a choice in this matter and it's up to you

3    and you alone to decide what to do.  Not your lawyer or anyone

4    else.  You may withdraw your previously entered plea of not

5    guilty and plead guilty as you apparently wish to do, or you

6    may choose to go to trial simply by persisting in your not

7    guilty plea.  Do you understand?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  If you plead not to the charges you

10   would have the right under the constitution and laws of the

11   United States to a speedy and public trial before a jury.  At

12   trial, you would have the right to be represented by an

13   attorney.  Do you understand?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  At trial you would be presumed to be

16   innocent.  That means that you wouldn't have to prove that

17   you're innocent.  Under our legal system it is the Government

18   that has the burden to prove beyond a reasonable doubt that

19   you are guilty of the crimes charged.

20          If at any trial the Government would fail to meet

21   that burden of proof, the jury would have to find you not

22   guilty.  Do you understand?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  That's why sometimes juries return

25   verdicts of not guilty even though the jurors believe the

11

1   defendant on trial probably committed the crimes charged.

2   When a jury returns a not guilty verdict the jurors are not

3   saying they believe the defendant is innocent.  They're merely

4   saying they are not convinced beyond a reasonable doubt that

5   the defendant is guilty.  Do you understand that difference?

6           THE DEFENDANT: Yes, Your Honor.

7           THE COURT: In the course of a trial, witnesses for

8   the Government would have to come into court, they would have

9   to testify under oath in your presence.  Your attorney would

10  have the right to cross-examine each witness, to object to

11  evidence offered by the Government, and she could offer

12  evidence on your behalf.  She would also have the right to

13  subpoena or compel witnesses to come into court and testify in

14  your case.  Do you understand?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  At trial you would have the right to

17  testify if you wanted to.  On the other hand, you couldn't be

18  forced to testify if you didn't want to.  Under the

19  Constitution and laws of the United States, no one can be

20  forced to testify against himself.  If you had a trial and

21  did not testify, Judge Dearie would instruct the jury that

22  they couldn't hold that against you.  Do you understand?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  If instead of going to trial you plead

25  guilty to the crime charged, and if Judge Dearie accepts your

1    guilty plea, you'll be giving up your constitutional right to

2    a trial and all the other rights I've just discussed.  There

3    will be no trial in this case.  The Court will simply enter a

4    judgment of guilty based upon your plea.  Do you understand?

5              THE DEFENDANT: Yes, Your Honor.

6              THE COURT:  If you do plead guilty, I'll have to ask

7    you questions about what you did in order to satisfy myself

8    and Judge Dearie that you actually are guilty of the crimes

9    charged.  You're going to have to answer my questions and

10   acknowledge your guilt, and when you do that you give up the

11   right not to testify against yourself.  Do you understand?

12             THE DEFENDANT: Yes, Your Honor.

13             THE COURT:  Also, if you enter a guilty plea today

14   and you admit the criminal conduct alleged in the indictment,

15   and if Judge Dearie accepts your guilty plea, you won't be

16   able to appeal to a higher court on whether you committed the

17   crime.  That will be over by your plea.  Do you understand?

18             THE DEFENDANT: Yes, Your Honor.

19             THE COURT:  Are you willing to give up your right to

20   a trial and the other rights I've just discussed?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  I understand that you've entered into a

23   Plea Agreement with the Government.  It's been marked as Court

24   Exhibit 1.

25   (AT THIS TIME COURT EXHIBIT 1 MARKED)

1          THE COURT: The first thing I'll ask you about it is

2     on the last page there are again a number of signatures, one

3     of which is next to the red PostIt with the red arrow.  Is

4     that your signature?

5          THE DEFENDANT: Yes, Your Honor.

6          THE COURT:  Mr. Momotok, did you read this Plea

7     Agreement carefully before you signed it?

8          THE DEFENDANT: Yes, Your Honor.

9          THE COURT: You discussed the contents of the Plea

10    Agreement with your attorney?

11         THE DEFENDANT: Yes, Your Honor.

12         THE COURT:  Do you believe you understand what's

13    contained in this Plea Agreement?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT: Mr. Nasson, does the Plea Agreement

16    that's been marked as Court Exhibit 1 contain the entirety of

17    any understanding the U.S. Attorney's Office has with Mr.

18    Momotok concerning these charges?

19         MR. NASSON: It does, Your Honor.

20         THE COURT:  Is that your understanding as well, Ms.

21    Moreno?

22         MS. MORENO: Yes.

23         THE COURT:  I take it you've reviewed the Plea

24    Agreement with Mr. Momotok as he said?

25         MS. MORENO: Many times, Your Honor.

1          THE COURT: I'm going to over a couple of things in

2     the Plea Agreement in a minute, Mr. Momotok, but I want to

3     know from you if there's anything in this Plea Agreement that

4     is not clear to you that you need me to explain to you.  Is

5     everything clear?

6               THE DEFENDANT: Yes, Your Honor.

7               THE COURT: The first thing I want to draw to your

8     attention concerning the Plea Agreement is its listing of the

9     maximum and minimum sentences and fines that can be imposed

10    upon you if you plead guilty to this charge.

11         The maximum term of imprisonment is 20 years, the

12    minimum term of imprisonment of zero years.  The maximum term

13    of supervised release is three years to follow any term of

14    imprisonment.  Supervised release is similar to being out on

15    bail.  It's a period of time after you get out of prison where

16    you have to live by certain terms and conditions and if you

17    violate those terms and conditions you can be sentenced to up

18    to two years in prison without credit for time you previously

19    spent in prison or time you previously spent on supervised

20    release.

21          There is a maximum fine of the greater of $250,000

22    or twice the gross gain or gross loss, whichever is greater.

23    There is mandatory restitution in the full amount of each

24    victim's losses as determined by the Court.  There is a

25    $100.00 special assessment and there is criminal forfeiture as

1    detailed in Paragraphs 6 through 11 of the Plea Agreement, and

2    an administrative bar and/or enforcement proceedings brought

3    by the United States Securities and Exchange Commission

4    including, but not limited to, disgorgement of all ill gotten

5    gains and civil penalties.

6            Mr. Momotok, are you citizen of the United States of

7    America?

8            THE DEFENDANT: Yes, Your Honor.

9            THE COURT: I want to spend a moment to discuss with

10   you the sentencing analysis that Judge Dearie will go through

11   to determine what sentence to give you.

12           The first step is for him to consider the United

13   States Sentencing Guidelines.  Those guidelines are issued by

14   the United States Sentencing Commission and judges look to

15   them to determine what a reasonable sentence is in a criminal

16   case.

17           While the sentencing guidelines are only advisory,

18   they are an important consideration in sentencing and Judge

19   Dearie will take them into account as one factor in

20   determining what sentence to give you.  Do you understand?

21           THE DEFENDANT: Yes, Your Honor.

22           THE COURT: Ms. Moreno explained to me that she has

23   reviewed the sentencing guidelines with you and how they

24   affect your case.  Is that correct?

25           THE DEFENDANT: Yes, Your Honor.

1          THE COURT: The second step for Judge Dearie to go

2   through is for him to consider whether there are any factors

3   present that would allow him to depart from the advisory

4   guidelines either upwardly or downwardly and also has to

5   consider the factors set forth in 18 United States Code

6   Section 3553(a) against all of the facts and circumstances of

7   your case and it may be that what is called a non-guideline

8   sentence may be appropriate.

9          The bottom line is that until your sentencing date

10  you cannot know with any certainty what the guidelines will

11  be, whether there will be grounds to depart from them, or

12  whether Judge Dearie will impose a non-guideline sentence.  Do

13  you understand?

14         THE DEFENDANT: Yes, Your Honor.

15         THE COURT:  Prior to your sentencing hearing, which

16  is currently set for December 9th at ten a.m., Judge Dearie

17  will receive a pre-sentence report from the probation

18  department that will have facts in it about you and the crime

19  to which you pled guilty, and it will also have a

20  recommendation to Judge Dearie on what the sentencing

21  guideline range is.

22         Your attorney will have the opportunity to read and

23  review and challenge the pre-sentence report in consultation

24  with you.  Do you understand?

25         THE DEFENDANT: Yes, Your Honor.

1           THE COURT:  Although it's unclear as we sit here

2    today what the guideline range will be, it's important for you

3    to know what the possible guideline sentences are based upon

4    the facts and circumstances that are available to us

5    currently.

6           This is a, what I call an educated guess that could

7    be wrong and if it is wrong it will not be grounds for you to

8    withdraw your guilty plea.  It is not binding on Judge Dearie.

9    It is not binding on the probation department or the U.S.

10   Attorney's Office.  Do you understand that?

11          THE DEFENDANT: Yes, Your Honor.

12          THE COURT: In your Plea Agreement it is estimated

13   that your base offense level is 7, that there is a 22 point

14   enhancement for gain of more than 25 million but not more than

15   $65 million.  A two point enhancement for a scheme involving

16   ten or more victims.  A two point enhancement for a

17   substantial part of a fraudulent scheme being committed

18   outside the United States, a two point deduction for a minor

19   role leading to an adjusted offense level of 31.

20          Taking into account your plea today and your

21   acceptance of responsibility, you would be entitled to an

22   additional two level reduction plus a plea before August 1st

23   entitles you to an additional one level reduction which would

24   bring it down to an adjusted offense level of 28.

25          MS. MORENO: Your Honor --

18

1          MR. NASSON: Just to correct the record, it's a plea

2  before August 5th.

3          THE COURT: What did I say?

4          MR. NASSON: August 1st.

5          MS. MORENO: First.

6          THE COURT: I'm sorry.  I apologize. I saw the August

7  5th and I don't know why I said August 1st.  August 5th.

8          So with an adjusted offense level of 28 assuming

9  that you are criminal history category 1 leads to a guideline

10  range of 78 to 97 months.

11          In this Plea Agreement you have stipulated to that

12  guideline calculation.  Do you understand that?

13          THE DEFENDANT: Yes, Your Honor.

14          THE COURT: Further, in the Plea Agreement you have

15  agreed that if Judge Dearie sentences you to a term of

16  imprisonment of 108 months or less regardless of how he gets

17  there, that you will not challenge or otherwise appeal your

18  conviction or your sentence.  Do you understand?

19          THE DEFENDANT: Yes, Your Honor.

20                    [Pause in proceedings.]

21          THE COURT: The last couple of things I want to draw

22  to your attention is as I've said previously Judge Dearie is

23  not bound by anything in this Plea Agreement or what the

24  Government or your attorney estimates the sentencing

25  guidelines to be.  Judge Dearie can sentence you according to

1  his interpretation of the guidelines and the law.  Although

2  the guidelines are one factor that Judge Dearie will take into

3  account, he has the authority under the law to decide upon and

4  impose a sentence that is more severe or less severe than the

5  guidelines.

6          Finally, under the guideline system that we have in

7  place, there's no parole board or parole commission.  What

8  that means practically speaking is that whatever sentence you

9  do receive from Judge Dearie will be very close to the actual

10  amount of time you spend in prison because you won't be able

11  to write a parole board or parole commission to let you out

12  early.  Do you understand?

13          THE DEFENDANT: Yes, Your Honor.

14          THE COURT:  Mr. Momotok, at this point do you have

15  anything -- any questions that you want to ask me about the

16  charges pending against you, your rights, or anything else

17  related to this matter that might not be clear?

18          THE DEFENDANT: No, Your Honor.

19          THE COURT: Are you ready to plead?

20          THE DEFENDANT: Yes, Your Honor.

21          THE COURT: Ms. Moreno, do you know of any reason why

22  Mr. Momotok should not enter a guilty plea?

23          MS. MORENO: No, Your Honor.

24          THE COURT:  Are you aware of any legal defense to

25  these charges?

20

1             MS. MORENO: No, Your Honor.

2             THE COURT: Mr. Momotok, how do you plead to Count 1

3    of the indictment, guilty or not guilty?

4             THE DEFENDANT: I plead guilty.

5             THE COURT:  Are you making this guilty plea

6    voluntarily and of your own free will?

7             THE DEFENDANT:  Yes, Your Honor.

8             THE COURT:  Has anyone threatened, forced, or

9    pressured you to plead guilty?

10            THE DEFENDANT:  No, Your Honor.

11            THE COURT:  Other than the Plea Agreement, has

12   anyone made any promises to you that are causing you to plead

13   guilty?

14            THE DEFENDANT:  No, Your Honor.

15            THE COURT:  Has anyone promised you sentence you

16   will receive from Judge Dearie if you plead guilty?

17            THE DEFENDANT:  No, Your Honor.

18            THE COURT:  Why don't you tell me why you are guilty

19   of conspiracy to commit wire fraud?

20            MS. MORENO: Your Honor, if I may address the Court

21   just briefly.

22            THE COURT: Sure.

23            MS. MORENO: If it's all right if Mr. Momotok reads

24   his allocution. English is not his first language.  If that's

25   all right with the Court.

21

1          THE COURT: That's fine.

2          MS. MORENO: Thank you.

3          THE DEFENDANT: I knew Mr. Kami Lumaway [Ph.] and I

4   believe towards the end of 2013 he told me that he was

5   obtaining press releases from hackers from Ukraine which were

6   not available to everybody and certain stocks, about certain

7   stocks ahead of the market.

8          I knew that Mr. Korchevsky was analyzing some of the

9   information in order to make stock trades.  I knew that this

10  inside trading information was best to U.S. based traders like

11  myself.  On the basis of this information I executed trades on

12  the New York Stock Exchange.  I executed these trades through

13  brokerage accounts which I controlled.  I sent and received

14  text messages from Mr. [inaudible] regarding stock trades

15  based on this inside information not available to the public

16  and had [inaudible] market.

17         I profited from these trades.  It was bad judgment

18  and I am very sorry.

19         THE COURT: Mr. Nasson, do you believe that

20  allocution is sufficient?

21         MR. NASSON: Your Honor, yes, with just -- I think we

22  need to address the issue of venue.

23         THE COURT: Do you have a proffer?

24         MR. NASSON: Sure.  The Government will prove at any

25  trial that co-defendant Khalupsky, who's defendant 2 in the

1  indictment, was living in Brooklyn, New York which is in the

2  Eastern District of New York during portions of this

3  conspiracy.  While there he did a number of things in

4  furtherance of the conspiracy including emailing a stolen data

5  file press release to himself at an email account that he

6  created in Brooklyn.  Also accessing brokerage accounts from

7  his Brooklyn residence and these brokerage accounts were used

8  to execute trades based on material non public information.

9          THE COURT: As supplemented by the proffer from the

10  Government, Ms. Moreno, do you think the allocution is

11  sufficient?

12          MS. MORENO: Yes, I do, Your Honor.

13          THE COURT: I do too.

14          Based on the information given to me I find that Mr.

15  Momotok is acting knowingly and voluntarily, that he

16  understands the charges pending against him, that he

17  understands his rights as a defendant in a criminal case, that

18  he understands the consequences of his guilty plea.  There is

19  also a factual basis for the plea.  It is therefore my

20  recommendation to Judge Dearie that he accept it.

21          Once again, Judge Dearie has set the sentencing

22  hearing for December 9th at ten a.m.

23          I've been asked to direct the U.S. Attorney's Office

24  to send a signed copy of the Plea Agreement to Ms. Molheen,

25  Judge Dearie's case manager, and any sentencing submissions

23

1 | are due from the defendant two weeks prior to sentencing and

2 | the Government one week prior to sentencing.

3 |          Anything else?

4 |          MR. NASSON: No, Your Honor.  Thank you.

5 |          MS. MORENO: Thank you, Your Honor.

6 | (Proceedings concluded at 12:57 p.m.)

7 |                   * * * * *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

24

1      I certify that the foregoing is a court transcript from

2 an electronic sound recording of the proceedings in the above-

3 entitled matter.

4

5      _____

6                        Shari Riemer, CET-805

7 Dated:  August 17, 2016

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25